## CHARLEY BUZAN v. THE STATE.

### No. 560. Decided May 4, 1910.

**1.—Disturbing Religious Worship.**

    Upon trial of disturbing religious worship, there was no error in admitting testimony that in the opinion of the witness it was defendant's face at the window in the church where the disturbance is alleged to have taken place, and that the noise came from that window.

**2.—Same—Evidence—Name of Defendant.**

    Where, upon trial of disturbing religious worship, a jury was waived and the case submitted to the court, there was no error in admitting testimony that the witness took the defendant to be the man he saw at the church window, and that other people had told him his name.

**3.—Same—Retaxing Costs—Sheriff Fees—Railroad Fare—Bond.**

    Where it appeared from the record on appeal from a misdemeanor conviction that the defendant when arrested offered sufficient bond, the officer should have accepted same. And where an officer from another county traveled therefrom to the county of the arrest on a railroad pass, he should have deducted the rate of three cents per mile from his fee bill, even if he was entitled to any fees; besides the fee bill not being itemized the motion to retax costs is granted.

Appeal from a conviction of disturbing religious worship; penalty, a fine of $25.

Appeal from the County Court of Hood. Tried below before the Honorable J. P. Mahan.

The opinion states the case.

*B. M. Estes,* for appellant.

*John A. Mobley,* Assistant Attorney-General, and *W. L. Dean,* County Attorney, *N. D. Payne,* for the State.

McCORD, Judge.—Appellant was convicted in the court below for unlawfully and wilfully disturbing a congregation assembled for religious worship by loud and vociferous talk, and by loud yelling and squalling, etc., his punishment being assessed at a fine of $25, the case having been tried before the court without the intervention of a jury.

We find in the record a bill of exceptions to the action of the court in permitting the State to prove by the witness Woods that "in the opinion of the witness it was defendant's face at the window in the church where the disturbance is alleged to have taken place, and that it was the opinion of the witness that the noise came from that window." The proof on the part of the State was that the congregation had assembled there for prayer meeting on this night and that the defendant came to the window and made a peculiar and loud noise and mewed like a cat. This witness Woods testified that he was not acquainted with the defendant on that night but that the man he saw in the courthouse in his opinion was the man he saw at the window. We can not see how the witness could have expressed it otherwise. He might have stated that it was his belief that this man was the same man seen at the window, but using the word "opinion" simply expresses the same thing. The bill of exceptions is without merit.

Appellant further objected to the testimony of the witness Woods that he was told by other people the name of the defendant. He stated he did not know the defendant by name, and that when he saw the man in

the courthouse he took him to be the man he saw at the window, and that other people told him what the man's name was. This bill of exceptions is without merit. The case having been tried before the court without a jury and there being an issue of fact, the findings of the court below will not be disturbed by this court, and the judgment of the lower court will be affirmed.

However, accompanying the transcript as a part of the record in this case, is a motion introduced in the court below to retax the cost. It appears that shortly after this disturbance at the church the defendant, who was a young man, left the county of Hood, went to an adjoining county, stayed awhile and then went to Atascosa County and was living there, or staying there; that the sheriff arrested him in Atascosa County, he was placed in jail and stayed all night, and on the next morning offered to give bond when the sheriff advised him that he had already telegraphed the sheriff of Hood County to come after him; that the sheriff of Hood County came after him and brought him back to the county of Hood, and for which services there was taxed up against the appellant on his conviction the sum of $92.50 as traveling expenses for carrying the prisoner from Atascosa to Hood County. The defendant further contends that he was given no opportunity to make bond and that the action of the sheriffs, both of Atascosa and Hood Counties, was arbitrary and that he should not be taxed this cost. The sheriff of Hood County testified that he traveled 812 miles going for and bringing the defendant back; that his fees and what he paid the sheriff of Atascosa County amounted to $101; that he paid the sheriff of Atascosa County $17.50 for his fees. He does not state what these fees consisted of except $5 that he paid the sheriff for bringing the defendant in an automobile forty miles to the train. What the other $12.50 was for, he does not know. He further testified that he received a telegram from the sheriff of Atascosa County that they had the defendant and for him to come after him. The defendant testified that when he was arrested in Atascosa County, he told the officers who arrested him that he could make bond; that his father lived in Somervell County, and would make a bond for his appearance; that the sheriff put him in jail that night and on the next morning his uncle came to Pleasanton and had a party with him to make bond, but the sheriff said it was too late as he had wired or phoned the sheriff of Hood County to come after him; that the parties offering to make bond were solvent and had a livery stable, hotel and other property, and that the sheriff gave him no opportunity to make bond; that the sheriff told him that there was no use trying to make bond as he directed the sheriff of Hood County to come after him. We wish to say in the first place that this bill is excessive and not authorized by the law. The Act of the Twenty-seventh Legislature, p. 21, provides that the sheriff shall be allowed five cents per mile in going after a prisoner and ten cents per mile in returning. The proof shows

it was only forty-two miles from Pleasanton to San Antonio. The sheriff would be entitled to $4.20 for bringing the prisoner from Pleasanton, Atascosa County, to San Antonio. The sheriff does not state for what the $17.50 was paid to the sheriff of Atascosa County. He admits that he was out only the sum of $35.42 on this trip and yet the defendant in this case is taxed up with the enormous sum of $92.50 to carry him from Atascosa County to Hood County. This sum is in no way itemized and we are not advised for what purpose this amount was expended. The sheriff testified he was riding on a free pass and that he went to San Antonio and back on a free pass, and the only railroad fare he had to pay out was $10 and some cents for the prisoner. The Thirtieth Legislature passed an Act prohibiting railroads from issuing free passes. In said Act there was a proviso that sheriffs or other *bona fide* elected peace officers, whose duties are to execute criminal process, should be exempt from the provisions of the Act and that the railroad could issue transportation to said sheriffs in the way of a free pass, and it further provided that said sheriffs and other peace officers using such free passes or transportation shall deduct the money value of the same at the legal rate per mile from any mileage accounts against the State or litigants, earned by them in executing process when such pass was used or could be used. The sheriff in his testimony in the case does not disclose that he made any deductions by reason of the use of the free pass upon which he was riding. The defendant was entitled to the value of this free pass at three cents per mile going and coming. Again, we believe that under the statute the defendant was entitled to a reasonable time in which to make bond, and the proof in this case showing that he not only offered to make bond but was willing to make bond, it would be an injustice to charge and tax defendant up with the expenses of the sheriff in going after him and bringing him to the county of Hood. Article 270, White's Code of Criminal Procedure, provides: "If the arrest be for a misdemeanor, he shall be taken before a magistrate of the county where the arrest takes place, who shall be authorized to take bail, and whose duty it shall be to transmit immediately the bond so taken to the court having jurisdiction of the offense." Under the provisions of this article the defendant should have been given the opportunity to have given bail and under the proof in this case this was denied him. We hold that the payment of $17.50 to the sheriff of Atascosa County should be itemized and if not authorized by law disallowed to that extent, that if the sheriff was entitled to anything, he must deduct the value of his free pass, going and coming for the prisoner. We therefore sustain the motion to retax the cost in this case and strike out the sheriff's cost of $92, but the sheriff will have the privilege of going into court and establishing his cost in accordance with this opinion, deducting his mileage for traveling on railroad pass, in case he is able to show that the defendant was not denied the

right to make bond, and that the defendant failed to make·bond, and that he was compelled to return him to Hood County.

The motion to retax cost is therefore granted, and the judgment affirmed.

*Affirmed.*